**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **KIMBERLY S. BEAN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 7:09cv093 |
| v. | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By:  Michael F. Urbanski |
| **Commissioner of Social Security,** | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Kimberly S. Bean ("Bean") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits and supplemental security income under the Social Security Act (the "Act").  Bean seeks an award of disability benefits based on impairments related to her claimed fibromyalgia, degenerative disc disease, migraine headaches and depression with a disability onset date of November 20, 2006.  In this appeal, Bean claims that the Commissioner improperly evaluated her credibility and discounted the opinions of certain of her treating medical sources by concluding that she could perform a range of light work and return to certain of her past relevant work.  Review of the administrative record confirms that the Commissioner's decision fails to appropriately address Bean's credibility as to the severity and intensity of her claimed migraine headaches and the functional limitations posed thereby.  As such, meaningful judicial review is precluded.  Accordingly, it is **RECOMMENDED** that this case be **REMANDED** to the Commissioner for further administrative development on the issue of the functional limitations posed by Bean's migraine headaches.

# I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

On the date of the Administrative Law Judge's ("ALJ") decision, Bean was 41 years old. Bean graduated from high school and had worked in food service for many years. In her last position, Bean worked as floral manager in a grocery store for more than four years.

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

(Administrative Record, hereinafter "R." 152.)  Bean's application for benefits was rejected by the Commissioner initially and again upon reconsideration.  An administrative hearing was convened before an ALJ on May 6, 2008.  (R. 24.)  In determining whether Bean was disabled under the Act, the ALJ found her fibromyalgia, degenerative disc disease, migraine headaches and depression to be severe.  (R. 16.)  Nevertheless, the ALJ concluded that these impairments were not totally disabling, and that Bean retained the RFC to perform a limited range of light work, certain of which she had performed in the past.  (R. 22.)

Bean sought review by the Appeals Council, which denied her request for review on February 27, 2009.  This appeal was filed in federal court on March 23, 2009.  The Commissioner filed a motion for summary judgment motion on November 5, 2009, and oral argument on the motion was held on February 17, 2010.

## III

On February 21, 2006, Bean began treating with Basic Essentials Spinal Care Center, Inc. in Galax under the care of Dr. Wade Sproviero, a chiropractor.  In her medical history, Bean indicated that she had been in an automobile accident sixteen years earlier.  (R. 417.)  X-rays taken at the time of her first chiropractic treatment revealed little in the way of objective findings, showing mild L5-6 facet imbrication and mild to moderate degenerative disc disease at C3-7.  (R. 419.)  From the outset of his treatment of Bean, Dr. Sproviero issued disability certificates for her, stating that she was incapacitated from working during various periods. (R. 311.)  On November 13, 2006, Dr. Sproviero wrote a letter indicating that Bean's chronic back pain, migraine headaches and fibromyalgia predisposed her to frequent aggravations when exposed to excessive stress such as moderate sustained physical exertion (bending, lifting and/or twisting), prolonged standing (greater than 8 hours), or mental stresses, or a combination thereof.

(R. 409.)  On February 15, 2007,  Dr. Sproviero again wrote a note to supplement his clinical records to "fully express the severity and chronicity of her neuromusculoskeletal condition." (R. 420.)  This letter explains that while Bean initially showed good response to chiropractic treatment, she was subject to a number of severe flare-ups, which "settled down considerably since her recent departure from the work environment." (R. 420.)  As a consequence, Dr. Sproviero wrote that Bean's condition is "valid and unstable, and that she will not be able to be gainfully employed for at least the next six months, if not permanently." (R. 420.)  The administrative record does not reflect any chiropractic treatment of Bean after this letter.  However, on April 7, 2007, Dr. Sproviero completed a Medical Source Statement indicating that Bean could lift and carry ten pounds occasionally and less than ten pounds frequently, and could stand or walk at least two hours and sit about six hours.  Dr. Sproviero noted occasional postural limitations, that Bean could perform limited reaching, and that she could not work in cold temperatures or around strong scents or fumes which could trigger a migraine.  This Medical Source Statement is inconsistent with Dr. Sproviero's letter opinion two months earlier, in which he stated Bean was unable to work.

After her first six weeks of chiropractic treatment, Bean went to a medical doctor at Fancy Gap Family Practice, complaining of back and neck pain. (R. 233.)  Bean was diagnosed with fibromyalgia, with multiple trigger points in her back, chest, elbows and knees noted. (R. 233.)   This diagnosis was confirmed by Dr. Vanessa Fant of Carilion Medical Associates, Galax and Hillsville, on January 15, 2007. (R. 240.)  Dr. Fant prescribed amytriptyline for the fibromyalgia.  Bean was seen occasionally during 2007 for her migraine headaches and fibromyalgia.  Bean was prescribed Flexeril, which helped somewhat. (R. 392.)  Bean began seeing Dr. Clark of this medical office in December, 2007. (R. 32.)  At that time, he completed a

Medical Evaluation for Temporary Assistance for Needy Families for the Commonwealth of Virginia. Dr. Clark indicated that Bean was unable to participate in any employment and training activities for one year due to her fibromyalgia and migraines. (R. 370-71.)

Bean was referred to a neurologist, Dr. Steven D. Nack, for treatment of her migraine headaches in late 2007, and Dr. Nack examined her on December 5, 2007. (R. 395-97.) In a letter to her family practice doctor dated the same day, Dr. Nack noted that Bean complained of migraine headaches which have worsened over the years and which normally averaged eight a month. (R. 395.) Bean testified that sometimes these migraine headaches last two to three days, at which time she may need to get a shot to ease the pain. (R. 32.) Bean testified that she has had the migraines for as long as she can remember, but that they have accelerated recently and she has had to miss a lot of work due to migraines. (R. 33.) Bean noted that her back pain frequently triggered a migraine. (R. 34.) Dr. Nack observed that her migraines were "quite a bit" frequent, and changed her medications to attempt to gain some prophylactic relief. (R. 396.) Dr. Nack noted not much improvement in reducing the frequency of the migraines in a January, 2008 visit, and increased the dosage of her medications. The last visit with Dr. Nack reflected in the administrative record occurred on March 5, 2008, at which time Bean reported averaging two migraines weekly, each lasting twenty four to thirty six hours, during which she was bothered by lights, noises and was nauseated. (R. 457.) Despite the frequency of her headaches, Dr. Nack wrote that "she has migraine [sic] and I would not consider her disabled from such." (R. 457.)

During the course of the administrative process, two state agency physicians reviewed Bean's medical records and determined that she retained the RFC to work. Based on review of Bean's medical records, Dr. Shirish Shahane determined on February 14, 2007 that Bean retained the capacity to perform light work. (R. 243-49.) This assessment was reconsidered by

6

Dr. Frank Johnson on April 26, 2007, and he made no changes in the RFC reached by Dr. Shahane. (R. 294-300.)

Bean was examined by a state agency physician, Dr. William Humphries, on November 26, 2007. Bean told Dr. Humphries that she had been in three major motor vehicle crashes in the 1990s and suffered from back and neck pain along with fibromyalgia, which has been present since 2005. She described pain over most of her body that increases with use. (R. 322.) Bean also told Dr. Humphries that she continues to have migraine headaches eight or nine times a month, but noted some improvement with use of medications. (R. 323.) Dr. Humphries' examination revealed moderately reduced range of motion in her neck and back, with muscle tenderness. Bean had a slight reduction in the range of motion of her shoulders and hips with some tenderness. Dr. Humphries found her radial, median and ulnar nerve functions to be intact bilaterally; her fine manipulation to be adequate, and her strength normal in all four extremities. Dr. Humphries noted no problems with Bean's mental status. As a result of his examination, Dr. Humphries concluded that Bean was limited to sitting, standing and walking six hours in an eight hour workday. She was limited to lifting 25 pounds occasionally and 10 pounds frequently, and was limited to occasional climbing, kneeling and crawling. (R. 326.) Nothing in Dr. Humphries' RFC assessment appears to factor in Bean's claimed migraines.

## IV

After reviewing this medical and treating source opinion evidence, the ALJ adopted the physical RFC found by Dr. Humphries. He added that "[t]he combination of claimant[']s pain and depression limits her ability to maintain attention and concentration, which is defined as needed to stop and think about what she is doing approximately 3 to 4 times per hour for very brief periods of time, without being off task." (R. 18.) No mention is made in the RFC

fashioned by the ALJ of Bean's twice weekly migraines or her need to be off of work for 24 to 36 hours to recover from them. This is true even though the ALJ noted at the hearing that he was most concerned about Bean's headaches. (R. 33.) Nor did the ALJ make any credibility finding concerning the frequency and severity of Bean's migraine headaches. While the ALJ makes a generalized credibility finding on page 19 of the record, there is no specific consideration in the explanation that follows as to whether he finds her complaints about the severity or the frequency of her migraine headaches to be credible or not. It appears, rather, that the ALJ simply accepts the conclusion by Dr. Nack that Bean's migraines were not disabling, and makes no credibility finding at all concerning her migraines. The failure to make a credibility finding as to the severity and duration of Bean's migraines is critical to this case because of its impact on the vocational evidence presented by the Vocational Expert.

The ALJ posed four hypothetical questions to a Vocational Expert. In each of these hypothetical questions, the ALJ asked the VE to assume the physical RFC determined by Dr. Humphries. In the first hypothetical, the ALJ asked the VE to assume that a combination of pain, depression, medication, fatigue or headaches causes a mild reduction in concentration, persistence or pace. By mild, the ALJ meant that Bean would be distracted for a few seconds every couple of minutes, but that she otherwise would continue to work. (R. 47.) In the second hypothetical, the ALJ asked the VE to assume a moderate reduction in concentration, meaning "up to 10, 20 seconds every several minutes to 15 minutes. There would be no abandonment of task, but she would be precluded from doing jobs that would require keen concentration." (R. 47.) Under these first two hypotheticals, the VE testified that Bean could return to her past relevant work, except for the floral manager position. (R. 47.) In the third hypothetical, the ALJ asked the VE to assume a severe reduction in concentration to the point that she would have to

8

abandon the task. In the fourth hypothetical, the ALJ addressed the frequency of Bean's migraine headaches, asking the VE to assume two migraines weekly, lasting 24 to 36 hours each, and that she would have to miss at least one day a week over a consistent period. Under the third and fourth hypotheticals, the VE found that there would be no jobs that Bean could perform.

Without explanation, the ALJ determined that hypothetical number two "closely resembles" Bean's RFC, and he rejected the other hypotheticals as he found them not to be supported by substantial evidence. (R. 23.) The problem with the administrative decision in this case arises, however, with the failure of the RFC and hypotheticals one through three to consider the medical evidence as to the frequency and duration of Bean's migraines and the concomitant failure of the ALJ to make any credibility finding as to her migraines. There is no dispute in this record that Bean suffers from debilitating migraine headaches and that she was forced to miss "a lot of work because of migraines." (R. 33.) Given the ALJ's observation that Bean's headaches were of paramount concern, it is inexplicable as to why the ALJ made no assessment of Bean's credibility or the functional limitations posed by her migraine headaches. Rather, the RFC found by the ALJ simply ignores her migraines.

As such, the administrative decision leaves unresolved a conflict in the evidence. On the one hand, Bean's medical records, including those from Dr. Nack, repeatedly refer to severe debilitating migraine headaches occurring eight times a month, each lasting 24 to 36 hours each. The VE testified that migraines of such frequency and intensity would preclude any work. (R. 48.) On the other hand, Dr. Nack declined to opine that Bean's migraines were disabling and concluded that "I would not consider her disabled." (R. 457.) Dr. Nack provides no explanation for his disability conclusion, and neither the Commissioner nor the court has any clue as to why he feels this way.

Of course, the ultimate decision as to disability is not for any one physician to make. Rather, it is reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); Social Security Ruling 96-5p. Given the medical evidence in this case as to Bean's migraines and the VE's testimony in response to hypothetical four that a person suffering from such debilitating migraine headaches could not work, the Commissioner abdicated his responsibility to make a disability decision by simply deferring to Dr. Nack on the functional limitations posed by Bean's migraines. The failure of the Commissioner to make any credibility finding as to Bean's migraines leaves an analytical hole in the evidence in this case which cannot be filled by Dr. Nack's conclusory opinion.

Given the state of the record in this case, a reviewing court is left only with unanswered questions. If, indeed, Bean averages two migraines weekly, each of which normally last 24 to 36 hours, why does Dr. Nack not consider such a condition to be disabling? Does the Commissioner consider Bean's complaints of migraines of such frequency and severity to be credible or not? There is no hint in any of Bean's medical records that any of her treating sources found her descriptions of her migraine symptoms to be exaggerated or fabricated. Yet, by adopting hypothetical two, the ALJ sub silentio finds that Bean's migraines only cause a reduction of concentration of ten to twenty seconds every fifteen minutes, rather than the substantially longer period that she claims and which is reflected throughout her medical records. In adopting hypothetical two, the ALJ must have concluded that Bean's migraines were not of the severity and intensity she describes, but the ALJ does not explain why he does so. Likewise, in adopting hypothetical two, the ALJ must have found Bean not to be credible as to the severity and intensity of her migraine headaches, but the ALJ's decision is silent on this issue.

Given these unanswered questions, the undersigned cannot conclude that hypothetical two, chosen by the ALJ, "fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). As such, the undersigned is constrained to **RECOMMEND** that this case must be **REVERSED** and **REMANDED** to the Commissioner for further development of the administrative record. On remand, the Commissioner should obtain a consultative evaluation as to the severity and intensity of Bean's migraines from an examining neurologist, expressly consider the migraine headaches in fashioning the RFC, and explain his assessment of Bean's credibility as to her claimed migraine headaches.

V

The Clerk is directed to transmit the record in this case to Hon. Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 637(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is also directed to send a copy of this Report and Recommendation to all counsel of record.

Entered: June 2, 2010.

/s/ Michael F. Urbanski

Michael F. Urbanski
United States Magistrate Judge